UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

             - v. -                         :

                                                        S1 07 Cr. 902 (BSJ)

JENNY PEREZ,                                :

                    Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


LEV L. DASSIN
*Acting United States Attorney*
*Southern District of New York*
*Attorney for the United States*
*of America*

JOHN P. CRONAN
Assistant United States Attorney,
*Of Counsel*



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York 10007*

January 29, 2009

**By Hand and Electronically Filed**

The Honorable Barbara S. Jones
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 620
New York, New York 10007

> Re:    <u>United States v. Jenny Perez</u>
>         S1 07 Cr. 902 (BSJ)

Dear Judge Jones:

        The Government respectfully submits this letter in advance of the defendant's sentencing, which is scheduled for Thursday, February 5, 2009, at 11:00 a.m.  For reasons set forth below, the Government concurs with the recommendation contained in the Presentence Investigation Report and respectfully submits that a sentence within the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 6 to 12 months would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.  In addition, the Court should impose restitution in the amount of $61,751.90, to be forwarded to the victim, Bank of America.

## I.  Background

### A.    The Offense Conduct

#### 1.    Background on the Scheme to Steal United States Treasury Checks

        This case is part of a larger federal investigation into a scheme of cashing stolen United States Treasury checks, addressed to individuals in the Upper East Side of Manhattan.  A corrupt Postal worker, Joseph McCree, was pilfering Internal Revenue Servicefrom the mail, and distributing them to others, including Angeles Reyes-Duran, Sandy "Alexander" Ruiz, and Pedro Mendez.  Those individuals would recruit people to open bank accounts, have checks deposited into their accounts, and then withdraw the proceeds of those deposits, in exchange for a fee.  Many participants in this scam have been convicted, and some are currently fugitives.

The Honorable Barbara S. Jones
January 29, 2009

  **2.**  **The Defendant's Role**

    The defendant allowed her bank account with Bank of America to be used for depositing and withdrawing the stolen checks.  Between April 2005 and May 2005, the defendant permitted others to deposit at least 15 stolen United States Treasury checks, totaling approximately $61,751.90, into her Bank of America account.  Based on information provided to the Government by a cooperating witness who also was involved in the scam, the defendant was paid to open a bank account, the cooperating witness would drive the defendant to banks for purposes of depositing stolen checks, and the defendant would then withdraw the deposited funds, receiving a cut of about 25% of the value of the deposited stolen checks.

    At the time of her arrest, and after being advised of and waiving her *Miranda* rights, the defendant gave a partial written confession.  The defendant wrote that her supervisor at work introduced her to an individual named, "Noel."  The defendant explained that she "open[ed] the ban[k] account at Ban[k] of America in 2005."  She wrote that she did not know "what kind of checks" were involved, and that she "just [got] the money out," and was paid $5,000 by "Noel."  The defendant also stated, "I am very sorry.  I [k]now I do wrong."  She further explained that she committed these acts because, the time, she needed the money because one of her children was sick and her income was insufficient.

  **3.**  **Status of Prosecutions of Other Participants in the Scheme**

    On or about March 13, 2006, Joseph McCree, Angeles Reyes-Duran, and Alexander Ruiz, a/k/a "Sandy," were charged in Indictment 06 Cr. 228 (NRB).   On or about December 18, 2006, McCree, the former Postal Service employee who stole the United States Treasury checks, entered a guilty plea before Judge Buchwald, to one count of bank fraud, in violation of 18 U.S.C. § 1344; one count of bank fraud conspiracy, in violation of 18 U.S.C. § 1349; one count of theft of Government property, in violation of 18 U.S.C. § 641; one count of conspiracy to steal property of the United States Government, in violation of 18 U.S.C. § 371; and one count of theft of mail by an officer of employee of the Postal Service, in violation of 18 U.S.C. § 1709.  On or about May 3, 2007, Judge Buchwald sentenced McCree to a term of imprisonment of forty-six months, to be followed by a term of supervised release of three years, and a $500 special assessment.  McCree currently is serving his term of imprisonment.

    On or about May 16, 2007, Reyes Duran, whose role was to recruit individuals to open bank account for purposes of depositing the stolen checks, waived indictment and the Government filed a Superseding Information, charging one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2, and one count of making a false statement in a passport application, in violation of 18 U.S.C. §§ 1542 and 3147.  On that date, Reyes-Duran entered a guilty plea before Judge Buchwald to both counts of the Superseding Information.  Reyes-Duran was sentenced to a term of imprisonment of seventy-eight months, and currently is serving his sentence.

The Honorable Barbara S. Jones
January 29, 2009

   Ruiz, who was another recruiter, has not yet been arrested, and remains a fugitive as of the date of this letter.  Ruiz currently faces charges in Indictment 06 Cr. 228 (NRB) of bank fraud, in violation of 18 U.S.C. § 1344; bank fraud conspiracy, in violation of 18 U.S.C. § 1349; theft of Government property, in violation of 18 U.S.C. § 641; and conspiracy to steal property of the United States Government, in violation of 18 U.S.C. § 371.

   On or about August 19, 2005, two other recruiters in the scheme – Pedro Mendez and Cipriani Mendez, a/k/a "Noel" – were charged in Indictment 05 Cr. 879 (GEL).  On or about March 1, 2006, Cipriani Mendez waived indictment and the Government filed Superseding Information S1 05 Cr. 879, which charged Cipriani Mendez with one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; one count of theft of Government property, in violation of 18 U.S.C. §§ 641 and 2; and one count of conspiracy to steal Government property, in violation of 18 U.S.C. § 371.  On that date, Cipriani Mendez entered a guilty plea before Judge Lynch to all three counts of Superseding Information S1 05 Cr. 879.  On or about October 31, 2007, Cipriani Mendez was sentenced to time served and a five-year term of supervised release.  Cipriani Mendez also was ordered to pay a $300 special assessment and restitution in the amount of $90,659.00.

   On or about September 19, 2005, Pedro Mendez was arrested pursuant to the arrest warrant issued on Indictment 05 Cr. 879 (GEL).  On or about September 23, 2005, Pedro Mendez was released on bail pending trial.  Pedro Mendez subsequently absconded.  On or about December 9, 2005, the Judge Lynch signed a bench warrant for Pedro Mendez's arrest on account of his failure to appear at a required court appearance.  Pedro Mendez remains a fugitive as of the date of this letter.

   Several individuals who played a similar role as the defendant – that is, they permitted stolen United States Treasury checks to be deposited into their bank accounts and withdrew the funds – also have been charged.  These individuals include Arsenio Vargas, Harry Alicea, Akil Guitan, Patricio Gil, Jose Negron, Lissandra Luciano, Betty Berges, and Ricky Rosado.

   On or about October 6, 2005, Arsenio Vargas pled guilty to Information 05 Cr. 1055 (RCC), to one count of theft of Government property, in violation of 18 U.S.C. §§ 641 and 2, and one count of bank fraud, in violation of 18 U.S.C. § 1344.  On or about September 5, 2007, Judge Holwell sentenced Vargas to three years of probation, a fine of $2,500, and restitution in the amount of $500.

   On or about April 23, 2007, Harry Alicea pled guilty to Information S1 06 Cr. 923 (SAS), to a felony count of theft of Government property, in violation of 18 U.S.C. § 641.  On or about July 30, 2007, Alicea was sentenced by Judge Scheindlin to one year of probation, and ordered to pay restitution in the amount of $42,703.31.

The Honorable Barbara S. Jones
January 29, 2009

On or about June 30, 2008, Ricky Rosado pled guilty to Information S1 07 Cr. 901 (PAC), which charged a misdemeanor count of theft of Government property, in violation of 18 U.S.C. § 641. On or about September 30, 2008, Rosado was sentenced to 3 years of probation, including 6 months of home confinement, and ordered to pay restitution in the amount of $51,787.00.

On or about April 22, 2008, Lisandra Luciano pled guilty to Indictment 07 Cr. 1154 (SAS), which charged her with a bank fraud conspiracy, in violation of 18 U.S.C. § 1349; bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; and theft of Government funds, in violation of 18 U.S.C. §§ 641 and 2. Luciano is awaiting sentencing before Judge Scheindlin.

On or about February 28, 2008, Akil Guitan pled guilty to Information S1 07 Cr. 907 (PKC), which charged him with a misdemeanor count of theft of Government property, in violation of 18 U.S.C. § 641. On or about June 2, 2008, Judge Castel sentenced Guitan to four years of probation, and ordered to pay restitution in the amount of $15,605.

On or about April 14, 2008, Jose Negron was charged in Indictment 08 Cr. 347 (PGG), with a bank fraud conspiracy, in violation of 18 U.S.C. § 1349; and bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. On or about October 6, 2008, a *nolle prosequi* was entered, dismissing the two counts against Negron.

On or about May 21, 2008, Patricio Gil was charged in Indictment 08 Cr. 453 (RMB), with bank fraud, in violation of 18 U.S.C. § 1344. On or about December 19, 2008, Gil entered a guilty plea to the felony bank fraud count before Magistrate Judge Theodore H. Katz, which plea Judge Berman accepted in an order dated January 5, 2009. Sentencing is scheduled before Judge Berman for March 30, 2009.

On or about February 28, 2008, Betty Berges was charged in Complaint 08 Mag. 408, with bank fraud, in violation of 18 U.S.C. § 1344. The Complaint was dismissed on or about July 2, 2008, pursuant to a deferred prosecution agreement that the Government entered into with Berges.

4.      **The Charge Against the Defendant**

On or about September 25, 2007, a federal grand jury charged the defendant in Indictment 07 Cr. 902 (BSJ) in three felony counts: (1) conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349; (2) substantive bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2; and (3) theft of Government property, in violation of Title 18, United States Code, Sections 641 and 2. The defendant was arrested on November 6, 2007 in the District of Massachusetts.

The Honorable Barbara S. Jones
January 29, 2009

On or about August 8, 2008, the United States Attorney for the Southern District of New York, in his discretion, filed Misdemeanor Information S1 07 Cr. 902 (BSJ), charging the defendant with the misdemeanor offense under 18 U.S.C. § 641.

## B.    The Defendant's Guilty Plea

The defendant pled guilty to Misdemeanor Information S1 07 Cr. 902 (BSJ) before United States Magistrate Judge Gabriel W. Gorenstein on September 24, 2008, in a proceeding that comported fully with Rule 11 of the Federal Rules of Criminal Procedure.[1]  The defendant entered her plea pursuant to a plea agreement entered into with the Government. Under that plea agreement, the parties stipulated to an advisory Guidelines range of 6 to 12 months and the defendant's payment of restitution in the amount of $61,751.90.  The stipulated Guidelines range reflects a loss amount that is greater than $30,000 but less than or equal to $70,000, for purposes of U.S.S.G. § 2B1.1(b)(1)(D).[2]  Under the terms of the agreement, the parties agreed that a sentence within the stipulated range of 6 to 12 months would be a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a), although either party may seek a sentence outside of that range based upon the Section 3553(a) factors.

During her plea allocution, the defendant explained to Judge Gorenstein that from "April 2005 to May 2005, some people w[ere] depositing federal checks into my account and I was withdrawing the money and give it to them."  Transcript, Sept. 24, 2008, at 12.  When asked by Judge Gorenstein, "Did you know that the checks . . . that you were asked to deposit into your account did not belong to the people who were giving them to you to deposit?", the defendant responded, "Yes."  *Id.* at 13.  The defendant also confirmed that she knew that these individuals who gave her the checks did not have authority to deposit the checks, and that she realized what she was doing was wrong.  *See id.*

## C.    The Probation Department's Recommended Sentence

In the Presentence Investigation Report ("PSI"), the Probation Department calculated a Guidelines range of 6 to 12 months' imprisonment, which, consistent with the plea agreement, reflects a offense level of 10 and a Criminal History Category of I.  *See* PSI ¶¶ 39–52. The Probation Department recommended a sentence of 3 years' probation, and the imposition of

---

[1]     Your Honor accepted the defendant's guilty plea in an order dated September 30, 2008.

[2]     The plea agreement explains that, although the defendant stole Government funds that exceeded $1,000, the Government, in its discretion, has charged a misdemeanor under Title 18, United States Code, Section 641.

The Honorable Barbara S. Jones
January 29, 2009

restitution in the amount of $61,751.90 and a mandatory $25 special assessment.  *See* PSR at p. 17.  The Probation Department recommended mental health treatment as a special condition of probation, citing the defendant's representation during her plea allocution that she suffers from depression and information from the defendant's Pretrial Services officer that she has attempted suicide on at least one occasion.  *See* PSI at pp. 17–18.

> The Probation Department did not uncover any aggravating circumstances that would warrant a term of imprisonment.  A first-time offender, Perez has demonstrated that she is capable of living a law-abiding life.  Although the defendant declined to provide a statement regarding the instant offense, it appears as though she was motivated by monetary gain and as a result, made some poor decisions.  We believe that three years' probation is appropriate to satisfy the objectives of punishment, protection of the community, and promotion of respect for the law.  We hope that the impact of her criminal conviction and sentence will provide the necessary deterrent to the defendant to refrain from similar misconduct in the future.

PSI at p. 18.

## II.  Argument

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).  *See Gall* v. *United States*, 128 S. Ct. at 596 & n.6.

The Honorable Barbara S. Jones
January 29, 2009

       In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

       Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 596 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; *see also Rita* v. *United States*, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597.

       In the present case, a sentence within the stipulated Guidelines range of 6 to 12 months would be sufficient, but not greater than necessary, to comply with the purposes of sentencing. From a categorical perspective, the Guidelines range that applies in this case reflects the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a). *Rita*, 127 S. Ct. at 2464. The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and accordingly, the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.*

       From an individual perspective, the defendant willingly joined and participated in the scheme, knowing full well that she was engaging in illegal activity. Over a two-month

-7-

The Honorable Barbara S. Jones
January 29, 2009

period, the defendant permitted at least 15 stolen United States Treasury checks to be deposited into her bank account, totaling $61,751.90, and withdrew the funds. For her role, the defendant received a cut of the value of those stolen checks. These stolen checks were being sent by the Internal Revenue Service to taxpayers who were entitled to tax refunds. As a result of the conduct of members of this conspiracy, including the defendant, those taxpayers did not timely receive these refunds.

Accordingly, a sentence within the Guidelines range would be reasonable and appropriate in this case. At an offense level of 10 and a Criminal History category of I, the defendant's range is 6 to 12 months, in Zone B. Pursuant to U.S.S.G. § 5C1.1(c), a sentence within Zone B may be satisfied by (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home confinement; or (3) a sentence of probation that includes a condition or combination of conditions that substitutes intermittent confinement, community confinement, or home detention for imprisonment.

Finally, the Court should order restitution in the amount of $61,751.90 pursuant Title 18, United States Code, Section 3663A, as agreed upon in the plea agreement. Restitution payments should be forwarded to:

> Bank of America
> Attn: Investigator Marie Harnois
> 60 Hempstead Avenue
> West Hempstead, New York 11552
> Tel.: (516) 559-8361

The Honorable Barbara S. Jones
January 29, 2009

### III.  Conclusion

For the reasons set forth above, the Court should impose a sentence within the stipulated Guidelines range of 6 to 12 months, and should impose restitution in the amount of $61,751.90, to be forwarded to Bank of America.

Respectfully submitted,

LEV L. DASSIN
Acting United States Attorney


By:   /s/ John P. Cronan
John P. Cronan
Assistant United States Attorney
Tel.: (212) 637-2779
Fax:  (212) 637-0097

cc:     Jeffrey G. Pittell, Esq. (By facsimile)